IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA, )
)
        Plaintiff, )
)
v. )   Case No. 10-20100-07-JWL
)
EMIGDIO VILLEGAS-CORTEZ, )
)
        Defendant. )
)
_____)

## **MEMORANDUM AND ORDER**

The matter is presently before the Court on defendant Emigdio Villegas-Cortez's motion to suppress evidence obtained from an automobile search (Doc. # 103). The Court conducted a hearing on the motion on December 20, 2010. Based on the evidence and argument presented at that hearing, the Court **denies** the motion.

**Facts**

On March 19, 2010, Sheriff's Deputy Mark Burns pulled over defendant's automobile on eastbound I-435 in Johnson County, Kansas. A subsequent search of the car yielded cocaine and large amounts of cash. Defendant seeks to suppress all evidence obtained as a result of the traffic stop.

Sheriff's Deputy Christopher Farkes, assigned at the time to a DEA Task Force, testified that he began surveillance of defendant's vehicle after authorities received a tip, in the course of an ongoing drug-trafficking investigation, that the vehicle was carrying

bulk currency and weapons and was headed to Mexico. Deputy Farkes testified that at approximately 8:20 p.m. on March 19, 2010, he observed defendant make two lane changes without signaling, in violation of Kansas law, when defendant exited from southbound US-69 Highway to eastbound I-435. Deputy Farkes then informed Deputy Burns that the violation had occurred, and he allowed Deputy Burns to assume the pursuit of defendant's vehicle. Deputy Farkes testified that he desired to effect a stop of defendant's vehicle for a traffic violation that would yield probable cause for a search of the vehicle.

Deputy Burns testified that he was informed of defendant's lane-change violation by Deputy Farkes and that he then began following defendant's vehicle. He testified that he subsequently observed defendant change lanes without signaling, and he then activated his lights and pulled defendant over. The video from Deputy Burns's car showed that Deputy Burns activated his lights within moments after he caught up with defendant's vehicle in taking over the pursuit from Deputy Farkes. The video also shows that defendant did activate his turn signal before changing lanes. Deputy Burns testified on cross-examination that defendant still may have violated the law in not leaving his turn signal on throughout the entire lane-change. Deputy Burns also testified that he knew that the DEA wanted the car pulled over, and that although he could have stopped defendant for the violation observed by Deputy Farkes, he preferred to wait until he also observed a violation.

Deputy Burns testified that while questioning defendant during the stop,

2

defendant indicated that he had borrowed the car from a friend, although he could not recall the friend's name. The vehicle was not registered to defendant or to the names on the licenses presented by defendant and his passenger. The vehicle was completely filled with luggage. Deputy Burns testified that he had a concern, based on these circumstances, that the vehicle could have been stolen. After Deputy Burns returned the documents to defendant and his passenger, he gave defendant a warning and told defendant that he was "done with the traffic stop." Deputy Burns testified that he then asked defendant if he could ask a question, and defendant responded in the affirmative. Defendant then answered a number of questions posed by Deputy Burns. Although defendant had originally stated that he was on his way to a friend's house, he then stated that he was actually headed to Mexico for a month, that the vehicle did not contain guns or drugs, and that he would not consent to a search because he did not want his things placed outside where it was raining. Defendant did state that a dog could sniff around the car. Deputy Burns testified that when he asked the passenger to exit the vehicle, he detected the odor of marijuana and observed brown packing tape, of the type often used for wrapping drugs or currency, in the center console. Deputy Burns conceded upon cross-examination that, although he indicated to defendant that the traffic stop was completed, in fact he had no intention of letting defendant leave before the car was searched.

During the traffic stop, Sheriff's Deputy Dusty Bernhardt arrived and conducted a canine sniff of the exterior of the vehicle. Deputy Burns testified that he had worked

3

with Deputy Bernhardt and that dog previously, that he was familiar with the dog's method of alerting to the presence of narcotics, and that the dog did in fact alert by sitting still outside the passenger-side door to defendant's vehicle. The video of the stop confirms that the dog did act in that manner at the door to the vehicle. At that point, defendant was placed in custody, and the vehicle was searched.

Deputy Bernhardt testified concerning the training and qualifications for him and his canine with respect to the detection of narcotics. He also testified that the dog alerts to the presence of narcotics by sitting and staring at the source of the odor, and that the dog did in fact so alert in this case.

Defendant did not offer any evidence at the hearing. With his motion, defendant submitted an affidavit in which he denied that he made any lane-changes without signaling.

**Analysis**

1. "[T]he burden is on the defendant to prove that the challenged seizure was illegal under the Fourth Amendment." *United States v. Long*, 176 F.3d 1304, 1307 (10th Cir. 1999). In this case, defendant challenges the propriety of the traffic stop of his vehicle. A traffic stop is a seizure for purposes of the Fourth Amendment. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Traffic stops are analyzed under the "reasonable suspicion" rubric set out in *Terry v. Ohio*, 392 U.S. 1, 27 (1968). *See United States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995). The first inquiry under *Terry* is whether the stop was justified at its inception. *See id*. "[A] traffic stop is valid

4

under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *Id.* at 787. An individual officer's subjective motivations for making a traffic stop are irrelevant to the Fourth Amendment inquiry. *See United States v. Burkley*, 513 F.3d 1183, 1186 (10th Cir. 2008).

At the hearing, defendant primarily took issue with the lane-change violation allegedly observed by Deputy Burns. Specifically, defendant notes that the video shows that defendant did activate his turn signal and that Deputy Burns pulled him over almost immediately upon acquiring his vehicle, thereby demonstrating an intent to stop defendant even without observing an actual violation. Even if Deputy Burns could not rely on that second alleged violation, however, Deputy Farkes testified credibly that defendant violated Kansas law minutes before by changing lanes twice without signaling. *See* K.S.A. § 8-1548 (driver must signal lane change). Both officers also testified that Deputy Burns was immediately notified of that violation observed by Deputy Farkes. Therefore, even without considering the purported second violation, defendant's first lane-change violation provided a basis for the traffic stop. *See United States v. Chavez*, 534 F.3d 1338, 1345-48 (10th Cir. 2008) (under collective knowledge doctrine, officer may rely on other officer's basis for stop, even if full information regarding that basis was not relayed); *United States v. Zamudio-Carrillo*, 499 F.3d 1206, 1209-10 (10th Cir. 2007) (upholding search after traffic stop effected by officer who relied on information from another officer). Moreover, given that traffic violation, the

stop was proper regardless of any intent by the officers to find a reason to effect such a stop. *See Burkley*, 513 F.3d at 1186. Accordingly, the Court concludes that the traffic stop of defendant was justified here.

2. Defendant does not argue that the stop was unreasonably conducted prior to the alert by the dog, and the Court concludes that the stop was in fact reasonable in scope and duration prior to the dog sniff. *See United States v. Williams*, 403 F.3d, 1203, 1206 (10th Cir. 2005) (second *Terry* inquiry is whether the officer's conduct during the detention was reasonably related in scope to the circumstances that justified the initial stop); *see also United States v. Sharpe*, 470 U.S. 675, 685 (1985) (whether detention prior to the canine alert was reasonable depends on common sense and ordinary experience); *United States v. Zubia-Melendez*, 263 F.3d 1155, 1161 (10th Cir. 2001) ("An officer conducting a traffic stop may request vehicle registration and a driver's license, run a computer check, ask about travel plans, vehicle ownership, and issue a citation."). In this case, Deputy Bernhardt was on the scene and conducted the dog sniff of the vehicle within five minutes after Deputy Burns checked and returned defendant's documents. Moreover, the stop became consensual after defendant agreed to answer questions from Deputy Burns, the dog sniff was conducted while that questioning was ongoing, and defendant gave consent specifically for the dog sniff. *See Williams*, 403 F.3d at 1206 (officer may detain a driver for questioning unrelated to the initial traffic stop if the driver voluntarily consents to further questioning).

3. Finally, the Court concludes that the officers had probable cause to search

defendant's vehicle. First, no probable cause was required to conduct the dog sniff of the vehicle. *See United States v. Ramirez*, 342 F.3d 1210, 1213 (10th Cir. 2003) (dog sniffs are not searches within the meaning of the Fourth Amendment). Deputy Burns and Deputy Bernhardt testified credibly and consistently that the dog alerted to the presence of narcotics in the vehicle, and that alert provided probable cause for the search. *See United States v. Kennedy*, 131 F.3d 1371, 1378 (10th Cir. 1997) (alert by reliable drug-detection dog provides probable cause to conduct a search). Defendant conceded at the hearing that he did not take issue with the fact that the dog alerted. Moreover, Deputy Bernhardt provided sufficient evidence of the dog's qualifications, which defendant did not dispute. *See United States v. Clarkson*, 551 F.3d 1196, 1203 (10th Cir. 2009) ("A party seeking to suppress evidence bears the burden of proving the dog is unqualified."). In addition, Deputy Burns's own detection of an odor of marijuana, combined with defendant's changing story and the suspicious circumstances concerning ownership of the vehicle, contributed to the totality of the circumstances that provided probable cause to support a search in this case.

Thus, defendant has not proved any basis for suppression of the evidence that resulted from the stop and search of his vehicle, and the Court therefore denies his motion.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant Emigdio Villegas-Cortez's motion to suppress (Doc. # 103) is **denied**.

IT IS SO ORDERED.

Dated this 12th day of January, 2011, in Kansas City, Kansas.

                                          s/ John W. Lungstrum
                                          John W. Lungstrum
                                          United States District Judge